**JOSEPH M. MEIER ISB No. 3314**
COSHO HUMPHREY, LLP
800 PARK BLVD., STE. 790
BOISE, ID  83712
PO BOX 9518
BOISE, ID 83707-9518
Telephone (208) 344-7811
Facsimile  (208) 338-3290
E-mail jmeier@cosholaw.com

Attorneys for Debtor-in-Possession

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In re: | ) |
| | ) Case No. 10-40200-JDP |
| | ) |
| Ted Miller Dairy, LLC, | )  Chapter 11 |
| | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |

## PLAN OF REORGANIZATION

     Ted Miller Dairy, LLC, hereinafter referred to as "Debtor", proposes the following Plan of Reorganization. It is important that you read this plan carefully and in conjunction with the Debtor's Disclosure Statement to evaluate the impact such plan will have upon your claim or equity security interest.

DEFINITIONS

     Unless the context otherwise requires, the following terms, when used in the Plan of Reorganization shall have the following meanings:

     1.    Administrative Claim: A cost or expense of administration of this Chapter 11 case, including any actual, necessary expense of preserving or liquidating the estate, any actual, necessary expense of operating the business of Debtor, and all allowances approved by the Court in accordance with the Code.  This includes any amounts due to the United States Trustee.

     2.    Allowed Claim:  "Allowed Claim" shall mean a Claim (i) in respect of which a proof of Claim has been filed with the Court on or prior to the Bar Date; or (ii) which is

scheduled in the Debtors' schedules of assets and liabilities and statement of financial affairs filed with the Court pursuant to § 521 of the Bankruptcy Code and which has not been listed (or is no longer listed on the Confirmation Date, if previously so listed) as disputed, contingent or unliquidated; or (iii) in respect of which a proof of Claim has been filed with the Court with § 502(h) or  § 502(i) of the Bankruptcy Code; and in any case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy Rule or an order of the Court, or as to which, if objections have been interposed, the Claim has been determined by order of the Court.

3.     Bankruptcy Code:  "Bankruptcy Code" or "Code" shall mean the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., and any amendments thereof.

4.     Breakeven Milk Price:  "Breakeven Milk Price" is defined in Article II Paragraph 48 of this Plan.  This definition is used in Class 3 and 8 of the Plan.

5.     Claim:  "Claim" shall mean any right to payment or right to an equitable remedy against Debtor for breach of performance if such breach gives rise to a right to payment, whether or not such right to payment or right to an equitable remedy is reduced to judgment, or whether liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured.

6.     Class:  "Class" shall mean any class into which Claims or Interests are classified pursuant to Article I of the Plan.

7.     Confirmation Date: The first business day occurring on or after the (14th) day after the Order of Confirmation is entered by the Court provided, however, that if a stay of the order confirming the Plan is in effect on such first business day, then the Confirmation Date shall be the first business day thereafter on which (i) no stay of the order confirming the Plan is in effect and (ii) the order confirming the Plan has not been vacated.

8.     Contested Claim:  "Contested Claim" shall mean any Claim which is listed on the schedules filed by the Debtor as contingent, unliquidated or disputed or is, or becomes, the subject of an objection filed with the Court in accordance with the provisions of the Bankruptcy Code.

9.     Court:  "Court" shall mean the United States Bankruptcy Court for the District of Idaho, presiding over the cases or, if necessary the United States District Court for said district having original jurisdiction over bankruptcy cases and the judges thereof.

10.     Effective Date: The Effective date of the Plan is the Confirmation Date.

11.     Person:   "Person" shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organizations, or a government or any agency or political subdivision thereof.

12.    <u>Revenue Code</u>:  "Revenue Code" shall mean the Internal Revenue Code of 1954, as amended, 26 U.S.C. § 1 et seq.

## ARTICLE I

CLASSIFICATION OF CLAIMS AND INTERESTS

All allowed claims and allowed interests have been placed in the following classes.  The Debtors have determined which claims fall into the classes described below.  A Proof of Claim or interest which asserts a claim or an interest which is properly includable in more than one class is in a class to the extent it qualifies within the description of such class and is in a different class to the extent it qualifies within the description of such different class.

a.    Priority Claims

1)    Class 1:    Class 1 consists of all allowed claims against the Debtor entitled to priority pursuant to Section 507(a)(1) or Section 507(a)(2) of the Code including reimbursement of the expenses of and compensation for services rendered by attorneys, accountants and other professional persons employed by the Debtor.  This classification also includes those claims premised on Section 503(b)(1) of the Bankruptcy Code that arose from transactions pursuant to Section 364(a) of the Bankruptcy Code.  This class includes the United States Trustee's Office, Cosho Humphrey, LLP, Frazer Frost and Rob Maynes.

2)    Class 2: Class 2 consists of all allowed claims against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Code, consisting of claims of governmental units for taxes or duties in such amounts as may be allowed by the Bankruptcy Court.. Members of this class shall include the claims of Internal Revenue Service and the Idaho State Tax Commission.

b.    Secured Claims:

1)      Class 3: Class 3 shall consist of the allowed secured claims of Wells Fargo Bank, N.A. whose debt is secured by a lien on milk, equipment, titled equipment and the cows,

2)      Class 4: Class 4 consists of the allowed secured claim of CNH America secured by a Case 420 S/N ending 9686.

3)      Class 5:  Class 5 consists of the feed lien of George Ellsworth in the amount of $86,000.00.

c.      Unsecured Claims:

1)      Class 6: Class 6 consists of the claim of Northwest Farm Credit Services which holds a lien on real property that is not owned by the Debtor

2)      Class 7: Class 7 consists of the unsecured claim of Greg Ledbetter.

3)      Class 8: Class 8 consists of all of the unsecured claims of the Debtor except those in Class 8 which were either schedules as liquidated, noncontingent and not disputed or for which a claim was filed.  These claims are identified on Exhibit "A" attached hereto and incorporated herein by this reference.

4)      Class 9:  Class 9 consists of the unsecured claims of Barbara Truitt; Carrie Lopez; Francesca Cantone; Johnny Lopez; Nico Cantone; U-U Ranch, LLC; and William Ledbetter.

d.       Equity Claims

1)      Class 10:  Class 10 consists of all claims held by the Members of the Debtor, who is Jane Miller f.k.a. Jane Ledbetter.

Article II

BASIC PLAN FOR DEBT RETIREMENT

1.      The Debtor proposes to negotiate with priority creditors who have indicated a willingness to negotiate with the Debtor concerning the payment of a priority claim in accordance with the requirements of the Bankruptcy Code.

2.      The Debtor proposes to pay secured creditors, with certain exceptions, the value amount of their secured claim according to the terms of this plan as described in this plan.

3.      Unless sold or refinanced the Debtor intends to use its excess income after payment of operating expenses and payments on secured clams to pay general unsecured creditors periodic payments on their allowed unsecured claims for 7 years or until all allowed unsecured claims are paid in full whichever first occurs.

4.      On the Effective Date of the Plan the Debtor's member Jane Miller has agreed to grant a second mortgage lien in her real property in which the dairy is located consisting of 159 acres.  This lien will be junior only to the existing lien of Northwest Farm Credit Services.  This mortgage will secure in full the claim of Wells Fargo Bank and will be in addition to the existing lien held by it in equipment, animals, milk and accounts.

5. The Debtor shall during the term of the Plan reserve the right to sell the operation and assets.  In the event of a sale sufficient proceeds must be generated to pay off the remaining allowed claims of Wells Fargo Bank, CHN Capital (Class 4), George Ellsworth (Class 5), the priority claims and the remaining principal balanceof all allowed unsecured claims described in class 8.

6.      The Debtor will attempt to obtain take out financing to retire debts.  In the event it obtains take out financing the financing must be sufficient to pay off the remaining allowed claims of Wells Fargo Bank, CHN Capital (Class 4), George Ellsworth (Class 5), the priority claims and the remaining principal balance of all allowed unsecured claims described in class 8.

7.      On the Effective Date of the Plan certain creditors related to the managing member of the Debtor shall agree that their debts shall be subordinate and not paid until all members of Classes 1 through 8 have been paid.  These creditors are described in Class 9.

Article III

DESIGNATION AND TREATMENT OF UNIMPAIRED CLASSES

The following classes are not impaired by the Debtor's Plan and are, therefore, not required to vote either for acceptance or rejection of the Debtor's Plan.

a.    Priority Claims, Class 1.  The holders of allowed claims in these classes shall, except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, receive cash in the amount of such allowed claim from the Debtor as described Article VI below.  Any such claim representing a liability incurred in the ordinary course of business by the Debtor may be paid by the Debtor in the ordinary course of business.

Article IV

TREATMENT OF UNIMPAIRED CLAIMS

The unimpaired classes of claims, Classes 1, shall receive the distributions set forth in Article VI on account and in complete satisfaction of all such allowed claims.

Article V

TREATMENT OF IMPAIRED CLASSES

All impaired classes of claims shall receive the distributions set forth in Article VI on account and in complete satisfaction of all such allowed claims.  The claims specified herein are impaired pursuant to Section 1124 of the Bankruptcy Code.

a.    Priority claims described in Class 2.

b.    Secured Claims, Classes 3, 4 and 5.

c.    Unsecured Claims, Classes 6, 7, 8 and 9.

d.    Equity Interests, Class 10.

Article VI

DISTRIBUTIONS

a.    Priority Claims

1)    <u>Class 1</u>:    Class 1 consists of all allowed claims against the Debtor entitled to priority pursuant to Section 507(a)(1) or Section 507(a)(2) of the Code including reimbursement of the expenses of and compensation for services rendered by attorneys, accountants and other professional persons  employed by the Debtor.  This classification also includes those claims premised on Section 503(b)(1) of the Bankruptcy Code that arose from transactions pursuant to Section 364(a) of the Bankruptcy Code.  This class includes the United States Trustee's Office.  The members of this class also include Cosho, Humphrey, LLP and the Debtor's accountant and the attorney for the unsecured creditors, Rob Maynes.  The creditors in this class shall be paid in full on the Effective Date of the Plan unless the member of the class agrees to different treatment of its claim.  All professionals, however, must apply for and obtain approval by the bankruptcy court of all fees and costs before the Debtor shall pay under this class.  The professionals shall promptly file such applications after the Effective Date of the Plan.  Cosho Humphrey, LLP is holding a prepetition retainer, which after approval of its fees by the Court, shall be applied to the outstanding balance.  The Unsecured Creditors Committee's attorney, Robert Maynes, also is a member of this Class and shall be paid after application and Court approval of fees.

2)    <u>Class 2</u>: Class 2 consists of all allowed claims against the Debtor entitled to priority pursuant to Section 507(a)(8) of the Code, consisting of claims of governmental units for taxes or duties in such amounts as may be allowed by the Bankruptcy Court.  The creditors of this class include the following:

a.    The Internal Revenue Service holds an allowed priority claim of $42,225.13;

b.    Idaho State Tax Commission holds an allowed priority claim of $379.00.

Debtor shall pay the Idaho State Tax Commission in Full on or before 6 months from the Effective Date of the Plan;

These allowed priority claims of the IRS shall be paid in equal quarterly payments on or before every June 30; September 30, December 31 and March 31 following the Effective Date but all remaining balances shall be paid in full on or before December 31, 2015.  These claims shall be paid together with interest at 5% per annum or less if the government interest rate has dropped. Debtor may prepay this claim at any time.  **Estimated quarterly payment for this class $2,510.93 for IRS**

The discharge granted by 11 USC § 1141(d) shall be and the same is modified as to the State of Idaho and Internal Revenue Service tax debt provided for in this Plan, and discharge of any tax debt under this Plan shall not be effective until all taxes provided for under this Plan have been paid in full.

If the State Tax Commission or Internal Revenue Service declares the Debtor or Debtor's successor in interest to be in default of the obligations under the Plan, then the entire pre-petition liability shall become due and payable immediately upon written demand to the Debtor or the Debtor's successor in interest as described herein.  A default shall also include the failure to make any deposits of any currently accruing post-petition employment tax liability or failure to make payment of any tax within thirty (30) days of the due date of such deposit or payment.  A further default shall be the Debtor's failure to file any required tax return within thirty (30) days of the due date of such return.  Failure to declare a default does not constitute a waiver by either the Internal Revenue Service or the State Tax Commission of the right to declare a timely default in the future.

If full payment is not made with thirty (30) days of such demand, or the Debtor does not cure any other specified default within thirty (30) days of such demand or other arrangement agreed in writing, then the Internal Revenue Service or State Tax Commission may collect any

unpaid liabilities through the administrative collection provisions of the Internal Revenue

Service or the Idaho Tax Commission.  The Debtor and the Debtor's property shall be liable for

such unpaid liabilities.

      b.     Secured Claims:

      3)     <u>Class 3</u>: Class 3 shall consist of the allowed secured claim of Wells Fargo

Bank.  Wells Fargo Bank filed a claim asserting an unpaid balance of $6,008,393.82.  This claim

however does not take into account any payments paid by Debtor since the petition was filed or

interest accrued since the petition.  This amount, less the amounts paid post-petition, shall be the

allowed secured claim of Wells Fargo Bank.

     On the Effective Date of the Plan, if it has not occurred by then, Wells Fargo Bank shall

apply all payments made by Debtor since the bankruptcy petition to the principal amount of its

claim.

     Thereafter commencing with the 20th day of the month following the Effective Date of

the Plan and each 20th day of the month thereafter Debtor shall pay Wells Fargo Bank a monthly

interest payment based on the unpaid principal balance at three and three-quarter percent (3.75%)

per annum over 84 months.  These monthly payments are projected on Appendix E attached to

the Disclosure Statement.  In addition Debtor shall pay periodic principal reductions disclosed in

Appendix E to the Disclosure Statement under "Line 050 NP Wells Fargo", in 2011, 2012, 2013,

2014, 2015, 2016 and 2017.  The totals for these years are:

     2011:  $238,000.00

     2012:  $137,000.00

     2013:  $197,500.00

     2014:  $267,000.00

     2015:  $311,000.00

     2016:  $364,500.00

2016:  $459,000.00

All remaining principal and interest shall be paid in full on or before 84 months of the Effective Date of the Plan.  Debtor shall have the right to prepay the allowed claim in this Class at any time without penalty.  Wells Fargo Bank shall retain its lien on all of its "prepetition collateral" until the allowed secured claim described in this class is paid in full.  Wells Fargo Bank shall also retain its lien on the Dairy and titled equipment described below.  The "prepetition collateral" is milk, cows, equipment, feed accounts and their proceeds.

Debtor, during the term of the Plan and the payments to this Creditor, shall continue to replace its herd animals care for and feed them, as dictated by normal dairy husbandry.  Further, it shall maintain its herd size and feed rations as disclosed in Appendix F and H to the Disclosure Statement, unless otherwise agreed to in writing by Wells Fargo Bank.

On the Effective Date of the Plan this class shall provide the Debtor with an itemized claim for its alleged principal, interest, attorney fees and costs which it asserts are due.  Debtor shall have 90 days to object to the asserted claims.  This class shall hold an Allowed Secured Claim unless Debtor objects within the 90 day period.  Wells Fargo Bank has asserted a right to post-petition "late charges", default interest and attorney fees.  Debtor agrees that Wells Fargo Bank is entitled to reasonable attorney fees but asserts that its claim shall not include default interest or late charges as it does not hold collateral with a value to pay these additional amounts.

The Debtor shall during the term of the Plan reserve the right to sell the operation and assets.  In the event of a sale sufficient proceeds must be generated to pay off the remaining allowed claims of Wells Fargo Bank, CHN Capital (Class 4), George Ellsworth (Class 5), the priority claims and the remaining principal balance of all allowed unsecured claims described in class 8.

The Debtor will attempt to obtain take out financing to retire debts.  In the event it obtains take out financing the financing must be sufficient to pay off the remaining claims of

Wells Fargo Bank, CHN Capital (Class 4), George Ellsworth (Class 5), the priority claims and the remaining principal balance of all allowed unsecured claims described in class 8.

On the Effective Date of the Plan Jane Miller shall grant[1] a mortgage on the 159 acre Jerome County land in which the Dairy is located to secure the allowed claim of Wells Fargo Bank, which lien shall be junior only to the existing lien of Northwest Farm Credit Services. Further, Wells Fargo shall retain its lien in the titled vehicles granted to it since this proceeding was filed to secure its claim.

Debtor has generated certain periodic reports which it delivered to this creditor as part of the orders approving use of cash collateral. Debtor shall continue to produce those reports monthly to Wells Fargo Bank.[2] Except as modified herein, the prepetition loan documents attached to Wells Fargo Bank's proof of claim filed June 23, 2010 shall remain full force and effect.

4)    Class 4: Class 4 consists of the allowed secured claim of CNH America holds a purchase money security interest in a skid steer loader. This creditor shall retain its lien until the claim is paid in full. This creditor shall be paid in accordance with its existing contract with the following changes. The interest rate shall be reduced to four percent (4%) per annum. Debtor is authorized to prepay this claim at any time without penalty. **Estimated monthly payment for this class $575.00.**

5)    Class 5: Class 5 consists of the claims of George Ellsworth who claims a feed lien in the amount of $85,369.38. On the first day of the month following the Effective Date of the Plan Debtor shall pay George Ellsworth a monthly payment based on the unpaid principal balance with interest at three and one-half percent (3.5%) per annum in equally amortized payments over a period of 84 months. Debtor shall have the right to prepay the

---

[1] As adequate protection Ms. Miller granted a mortgage to Wells Fargo Bank. This existing mortgage may be modified to comply with this Plan.
[2] The cash collateral order required more frequency than every month. Debtor will provide monthly milk information as opposed to bi-weekly.

allowed claim in this Class at any time without penalty. George Ellsworth shall retain its lien on feed until the amount described in this class is paid in full.

On the Effective Date of the Plan this class shall provide the Debtor with an itemized claim for its alleged principal, interest, attorney fees and costs which it asserts are due. Debtor shall have 90 days to object to the asserted claims. This class shall hold an Allowed Secured Claim unless Debtor objects within the 90 day period. **Estimated monthly payment for this class $1,647.31.**

6) <u>Class 6</u>: Class 6 consists of the unsecured claim of Northwest Farm Credit Services against this Debtor. Northwest Farm Credit Services holds, however, a claim secured by assets of Jane Miller including a 159 acre parcel on which the Debtor's Dairy is located. Prior to the filing of this Plan the Debtor executed a stipulation with the creditor of this class and that is hereby incorporated as terms of this Plan and set forth in full below:

Debtor is in default under the terms and conditions of the Loan Documents. On April 27, 2010, the Debtor was delinquent in the following amounts: Past Due Principal in the amount of $33,128.60, Past Due Interest in the amount of $38,823.95, Past Due Default Interest in the amount of $782.71, and Attorney Fees of $530.00. The Debtor agrees to timely perform the promises and covenants hereinafter set forth:

a. Amount of FCS's Allowed Secured Claim. The claim of FCS is fully secured. The approximate balance of FCS's allowed secured claim as of April 27, 2010, is the sum of $3,001.107.97. In addition to said sum are accruals of interest, costs and expenses incurred by FCS subsequent to that date, including attorney's fees, appraisal fees and costs incurred by FCS in response to these bankruptcy proceedings, which expenses are not reflected in FCS's Proof of claim on file herein. Debtor is entitled to credit for post-petition payments made on the Loan. The Debtors agree that the full amount of FCS's claim, including the accrual of post-petition attorney's fees, appraisal fees, costs, interest and other charges permitted by the loan documents,

as of the date of confirmation of Debtors' Plan, shall be the amount of FCS's allowed secured claim.

b. Payment of FCS's Allowed Secured Claim. FCS's allowed secured claim shall be paid by the Debtor in the following manner:

i. Interest Rate. The Interest Rate on the amount of FCS's allowed secured claim, as defined above, is a 3 year ARM variable rate, currently 4.15 percent (4.15%) per annum. The next scheduled re-pricing date is January 1, 2013 and the maturity date is January 1 2027. The specific terms related to the Debtor's interest rate is set out in the Loan Documents.

ii. Loan Reamortization. The amount of any delinquent installments due at the time of confirmation shall be re-amortized over the remaining term of this Loan and paid by the Debtor in monthly installments, with the first Monthly installment payment due on the 1st day of the month following confirmation of the Debtor's Chapter 11 Plan of Reorganization. The monthly installments shall thereafter continue until the whole of FCS's allowed secured claim is paid in full on or before January 1, 2027.

iii.     Lien Retention. FCS shall, until its allowed secured claim is paid in full, retain its lien in the real and personal property as provided in its loan documents. The lien of FCS in its collateral shall be deemed to be valid, enforceable and duly perfected and no filing or other act in accordance with applicable state law shall be necessary to create or perfect such liens and security interests.

c. Default, Notice, Stay Relief. Should Debtor default in complying with any of the terms and conditions of this Plan after the Effective Date, and said default shall remain uncured for a period of 30 days after receipt by Debtor of a written notice and demand to cure by FCS, FCS shall be entitled to immediate entry of an order annulling, terminating, modifying and removing the automatic stay, as it relates to the real and personal property securing its claim, without

further notice to the Debtor and without further judicial proceedings. In the event the stay is no longer in effect at the time of default, pursuant to 11 U.S. §§362(d) and 1141(d), or otherwise, FCS may thereupon proceed to foreclose and enforce its liens in any collateral held by it to secure repayment of the total amount of Debtor's obligation owed to FCS. FCS may pursue any and all of its contractual rights and remedies available as a creditor or as a secured party under the loan documents or as otherwise provided by law, including, but not limited to, foreclosure of its liens. In the event of a default, as described herein, the full amount owed to FCS will be accelerated and become immediately due, owing and payable in full regardless of any Plan provision, the terms of this Stipulation or otherwise, and FCS will be entitled to collect the full amount then due and owing, including all accrued interest at the rates established by the loan documents, fees and costs and be entitled to pursue Debtor for any deficiency.

d. Provide Yearly Financial Information. Debtor shall provide to FCS, annually, within 120 days of the end of its fiscal year which ends on December 31 of each year, in a form prescribed by or acceptable to FCS, current balance sheets, current income and expense statements and a dairy budget certified to be complete and accurate by the Debtor. If Debtor fails to provide the required financial information within 30 days of the date Debtor was required to do so, default interest on the unpaid balance of FCS 's secured claim shall thereupon commence to accrue until the requested financial information is provided by the Debtor.

e. Default Interest. Notwithstanding the interest rates provided for in the original loan documents and the terms of this Stipulation, following the confirmation of a Plan incorporating the terms of the Stipulation or this Plan, all past due installments, and the entire balance once accelerated shall accrue interest at a default rate which shall be equal to the interest rate then in effect plus 4% per annum until the same have been paid in full by the Debtors.

f. Original Loan Documents Remain in Effect. Except as expressly modified by this Stipulation, Debtor agrees that the terms of the original loan documents shall remain in effect,

and further agrees to comply with all of the terms and conditions contained in the loan documents.

g. Written Notice. Any written notice required by this Plan shall be complete if mailed by first class mail, postage prepaid, to the Debtor at its last known address and Debtor's bankruptcy attorney, Joseph M. Meier, Esq. The Debtor is required to notify FCS, in writing, of any change in its mailing address.

h. FCS's Remedies Upon Default. In the event of any default the Plan consistent herewith, and in addition to those remedies otherwise set out in this Stipulation, FCS shall have all of the following remedies, which are not exclusive and are cumulative:

i. The right to proceed to obtain a judgment, decree of foreclosure and order of sale from a court of competent jurisdiction, as it respects FCS's real estate collateral; obtain possession of such collateral by judicial process, without the posting of a bond, any law to the contrary notwithstanding; or otherwise enforce its contractual rights against the Debtor, with or without suit.

ii. Exercise any and all rights which FCS may have as a matter of law or equity and as specified in the underlying loan documents executed by Debtor. Any delay or omission on the part of FCS in exercising any right or remedy shall not operate as a waiver of such right or remedy, or any other rights or remedies; and

iii. Exercise any and all rights provided by bankruptcy law.

i. Additional Documents. Debtor agrees to execute any and all documents necessary to affect the terms and conditions of this Plan.

j. As stated in the Stipulation, there was a Mutual Release of Claims. FCS forever releases Debtor, and Debtor forever releases FCS from any and all claims or causes of action, contractual, tortious, or otherwise, known or unknown, arising from any act or omission prior to the date of the Stipulation. This mutual release extends to the parties mentioned and all of their

predecessors, successors, and assigns; parent, subsidiary, and related corporations or businesses; and all of their past and present officers, directors, employees, agents, attorneys, and representatives. **This mutual release does not release the parties from their obligations as set forth in the Stipulation, the Loan Documents or the Plan.**

3. Retained Jurisdiction. It is further agreed that the Bankruptcy Court shall have and retain jurisdiction over the parties and subject matter of the stipulation and any order approving the same, for the purpose of resolving any dispute relating to the rights and duties specified hereunder.

7)   Class 7:  Class 7 consists of the unsecured claim filed by Greg Ledbetter in the amount of $6,042,666.82 (Claim 28).  This claim is an indemnification claim based on the guaranty signed by this creditor.  No payments shall be made to Greg Ledbetter on this claim.  Rather Debtor is satisfying the claim by the treatment of Wells Fargo Bank described in Class 3 of this Plan.

8)   Class 8: Class 8 consists of all of the unsecured claims against the Debtor, except those claims described in Class 9.   Attached hereto as Exhibit "A" is a list of the claims showing the creditor, the claimed amount and which claims the Debtor disputes.   The last column of the Exhibit shows the "Allowed Claims" which is the amount the Debtor is willing to recognize as the undisputed allowed claim held by that particular creditor.  Commencing with the Effective Date of the Plan, the Debtor shall pay the following amounts described in the budget attached as Appendix E to the Disclosure Statement:

i.   2011: The periodic amounts in March, April and May which total $75,200.00.

ii.   2012:  The periodic amounts in February through May which total $43,500.00.

iii.   2013:  The periodic amounts which total $62,500.00.

    iv.    2014:  The periodic amounts which total $84,200.00.

    v.    2015:  The periodic amounts which total $98,900.00.

    vi.    2016:  The periodic amounts which total $114,700.00.

    vii.    2017:  The periodic amounts which total $101,600.00.

No interest will be paid to this Class.  The creditors in this class shall receive a prorata payment based on their Allowed Unsecured Claim divided by the total amount of Allowed Unsecured Claims in the Class.  Debtor shall be entitled to hold back payments which do not exceed $5.00 as an administrative convenience but shall pay that creditor when it's held back payments accumulate to over $5.00.  To the extent Debtor disputes any amount of a creditor's claim, then that disputed portion shall be held until the claim is resolved by stipulation or court order.  In the event Debtor prevails then the balance of the Allowed Unsecured Claims in this class shall receive the disputed portion pro rated among them.  In the event the claimholder prevails then it shall receive its withheld portion on the next monthly distribution.  Debtor may prepay this class at any time after the Effective Date of the Plan.

The Debtor shall during the term of the Plan reserve the right to sell the operation and assets.  In the event of a sale, sufficient proceeds must be generated to pay off the remaining allowed claims of Wells Fargo Bank, CHN Capital, George Ellsworth, the priority claims and so that this Class receives the remaining principal balance owed to the holders of all allowed unsecured claims contained in this class 8.  Upon a sale the periodic payments shall cease.

The Debtor will attempt to obtain take out financing to retire debts.  In the event it obtains take out financing the financing must be sufficient to pay off the remaining allowed claims of Wells Fargo Bank, CHN Capital, George Ellsworth, the priority claims and so that this Class receives the remaining principal balance owed to the holders of all allowed unsecured claims contained in this class 8.  Upon a refinance the periodic payments shall cease.

Class 9:  Class 9 shall consist of the following unsecured creditors who are related to Jane Miller:

|   | Holder | Amount |
|---|---|---|
| a. | Barbara Truitt | $140,950.00 |
| b. | Carrie Lopez | $82,764.00 |
| c. | Francesca Canton | $42,534.00 |
| d. | Johnny & Karen Lopez | $1,725,011.00 |
| e. | Nico Cantone | $9,925.00 |
| f. | U-U Ranch, LLC | $179,685.00 |
| g. | William Ledbetter | $70,133.00 |

The creditors of this class hold allowed unsecured claims.  They will not receive any distributions on their claims until Classes 1 through 8 are paid in full.

Class 10:  Class 10 consists of the equity holders in the Debtor namely Jane Miller.  On the Effective Date of the Plan Ms. Miller shall retain her interest in the Debtor upon the grant of the Mortgage lien in favor of Wells Fargo Bank.

Article VII
PROVISIONS FOR IMPLEMENTATION OF THE PLAN AND
FOR MEANS FOR EXECUTION OF THE PLAN

1.      Debtor's income should be sufficient to pay the obligations described in the Plan, which are contained in the projections attached to the Disclosure Statement.  See Appendix E through H of the Disclosure Statement.

2.      Jane Miller's family is foregoing payments (see Class 9) and she is granting a mortgage lien as described in this Plan.

Article VIII

PROPERTY TO BE DEALT WITH BY THE PLAN

All property of the Debtor is dealt with in the Plan.  Secured creditors shall retain their security interest or lien in the property of the Debtor, subject to the provisions of the Bankruptcy Code and this Plan.

Article IX

EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All existing executory contracts and unexpired leases are hereby assumed, including the lease of the dairy.  The only other executory contract known to Debtor is the milk contract it holds with its buyer.

Article X

DISCHARGE

Except as otherwise provided for in the Plan or in the Order of Confirmation, entry of the Order of Confirmation acts as a discharge effective as of the Effective Date of the Plan, of (i) any and all claims arising or occurring prior to the effective date, and (ii) any and all claims of the kind specified in §§ 502(g), 502(h), or 502(i) of the Code.  Such discharge will be effective under Section 1141 of the Code whether or not a Proof of Claim is filed or deemed filed, such claim is allowed, or the holder of such claim has accepted the Plan.

Article XI

VESTING OF PROPERTY IN DEBTOR

a.  Upon the Effective Date of the Plan all property of the estate shall vest in the Debtor and shall be held and owned by the Debtor, free and clear of all liens, claims and interests of all creditors or all interest holders in the Debtor, except to the extent provided for in the Plan.

b.  Pending confirmation of the Plan, unless the Court has otherwise expressly ordered or this Plan otherwise expressly provides, all creditors, will be stayed from proceeding against the Debtor, the Debtor's assets, or the assets of the estate.

Article XII

DESCRIPTION OF INSIDERS

The Debtor shall remain in possession of the property as described in this Plan. The Debtor shall continue to operate the business and the Debtor's sole member Jane Miller shall continue to receive compensation for the operation of the business as disclosed in the budget attached to the Disclosure Statement.

ARTICLE XIII

RETENTION OF JURISDICTION

Until this Plan has been fully consummated through the entry of a final decree completely closing the case, the Bankruptcy Court shall retain jurisdiction over all matters necessary to ensure that the purposes and intent of this Plan are carried out, including but not limited to the following:

1.    Determination of requests for payment of claims entitled to priority under §507(a)(1) of the Code, including compensation of parties entitled thereto;

2.    In the event an appeal is perfected from the order confirming the Plan, the Court shall also retain jurisdiction appropriate to protect the interests of the estate and to enter such orders as are necessary to protect the interests of creditors during the pendency of such appeal.

3.    To hear and determine any objection to a claim or equity security interest when such objection is filed with the Court by the Debtor;

4.    To hear and determine all questions and disputes regarding title to the property of the Debtor or the Debtor's estate;

5.      To correct any defect, cure any omission, or reconcile any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purpose and intent of the Plan;

6.      To liquidate damages in connection with any disputed claims;

7.      To adjudicate all claims of a security or ownership interest in any property of the estate or in any proceeds thereof;

8.      To allow and classify claims of any creditor, reexamine claims as provided under the Code, and to hear and determine any objection to a claim or equity security interest when such objection is filed with the Court by the Debtor;

9.      To issue any order necessary to implement the Plan or order of confirmation, including, without limitation, such declaratory and injunctive orders as are appropriate to protect the Debtor, the Debtor's estate, and the reorganized Debtor in his estate from actions of creditors, equity security holders, or other parties in interest;

10.      To hear and determine any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or to the rights or obligations of any party in interest with respect thereto and correct any defect, cure any omission, or reconcile any consistency in the Plan or the order of confirmation as may be necessary to carry out the purpose and intent of the Plan;

11.      To hear and determine any modification of the Plan pursuant to Section 1127 of the Bankruptcy Code;

12.      To hear and determine all issues concerning release of property from the liens to enable sales of the real property.

13.      To adjudicate, in an adversary proceeding if necessary, all reserved rights of the Debtor under this Plan to prosecute causes of actions under 11 U.S.C. section 544, 545, 546, 547, 548 549 and/or 550 of the United States Bankruptcy Code and applicable State Law.

14.     To hear and determine any matter related to the assumption, assignment, or rejection of an executory contract or unexpired lease of the Debtor; and

15.     Entry of a final decree closing this Chapter 11 case.

Nothing contained herein shall be construed as restricting the Debtor in the conduct of its business and operation unless the Plan specifically provides to the contrary.

Article XIV

TAX IMPLICATIONS

The Debtor has operated at a loss for the last two years.  Debtor does not currently believe there will be any adverse tax consequences connected to confirming this plan.  Debtor is not familiar with any tax attributes held by its creditors and is advising creditors to consult with their own experts as to the tax implications, if any, of the Plan on those creditors.

Article XV

MISCELLANEOUS

a.     The headings in the Plan are for the convenience of reference only and neither constitutes a portion of the Plan nor in any manner affects the construction or meaning of the provisions of the Plan.

b.     The authority of the Debtor to agree to modifications, supplements or amendments of or to any agreements or instruments referred to in the Plan or utilized in the Debtor's business shall be as provided in such agreement or instruments.

c.     Except to the extent that the Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed and construed and enforced in accordance with the laws of the State of Idaho.

d.     The rights, duties and obligations of any person named or referred to in this Plan shall be binding upon and shall inure to the benefit of the successors or assigns of such person.

e.      Whenever any payment or distribution to be made under this Plan shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the immediately following business day.

f.      The Debtor shall be the person who shall be making the payments described in this Plan and shall be compensated as described in this Plan.

g.      Any notice, pleading, or document, required to be served by law or according to the provisions of this Plan, shall be in writing and shall be served in person or by Certified Mail upon the Debtor as follows: Ted Miller Dairy, LLC, 268-A South 500 West, Jerome, Idaho 83338 and to attorney for Debtor-in-Possession Joseph M. Meier, Cosho Humphrey, LLP, PO Box 9518, Boise, ID 83707.


THIS PLAN OF REORGANIZATION OF Ted Miller Dairy, LLC is submitted this 6th day of August, 2010.

Ted Miller Dairy, LLC


/s/ Jane Miller_____
By:  Jane Miller
Its: Managing Member

COSHO HUMPHREY, LLP


BY_/s/ Joseph M. Meier_____
  Joseph M. Meier

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the __9th___ day of August, 2010, I filed the foregoing electronically through the CM/ECF System, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

William J Batt on behalf of Interested Party Greg Ledbetter
wjb@battfisher.com

Robert A Faucher on behalf of Creditor Wells Fargo Bank, National Association
rfaucher@hollandhart.com, boiseintaketeam@hollandhart.com;ntpratt@hollandhart.com

John R Hammond on behalf of Interested Party Greg Ledbetter
jrh@fpa-law.com

R Ron Kerl on behalf of Creditor Northwest Farm Credit Services, FLCA
Ron@cooper-larsen.com, jamieb@cooper-larsen.com

Mary P Kimmel on behalf of U.S. Trustee US Trustee
mary.p.kimmel@usdoj.gov

Robert J Maynes on behalf of Creditor Committee The Official Committee of Unsecured Creditors
mayneslaw@hotmail.com, robert.maynes@gmail.com;rosie.mayneslaw@gmail.com

Joseph M Meier on behalf of Debtor Ted Miller Dairy, LLC
jmeier@cosholaw.com, jbean@cosholaw.com

David Wayne Newman on behalf of U.S. Trustee US Trustee
david.w.newman@usdoj.gov

Larry E Prince on behalf of Creditor Wells Fargo Bank, National Association
lprince@hollandhart.com, chardesty@hollandhart.com;boiseintaketeam@hollandhart.com

Scott A Tschirgi on behalf of Creditor Pioneer Commodities
sat@satchartered.com, mlennox@satchartered.com;gschow@satchartered.com

US Trustee
ustp.region18.bs.ecf@usdoj.gov

AND I FURTHER CERTIFY that on such date I served the foregoing on the following non-CM/ECF Registered Participant via first class mail with postage prepaid addressed as follows:

Mike Edwards
Frazer Frost, LLP
2250 W. Main Street, Ste. B
Visalia, CA 93291

Russ Dean Ford, Inc., a Washington corporation
c/o Craig W. Christensen
Attorney at Law
P. O. Box 130
Pocatello, ID 83204


/s/ Joseph M. Meier
JOSEPH M. MEIER